IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COREY RICHARD HORNE, #359676      *

Plaintiff,      *

v.      *      Civil Action No. WDQ-11-2787

JOHN or JANE DOE, Warden, Baltimore      *
   County Detention Center, [1]
JOHN or JANE DOE, Medical Director,      *
   Baltimore County Detention Center, [2]
JOHN or Jane Doe, Warden, Maryland [3]      *
   Reception Diagnostic Classification Center,
JOHN or Jane Doe, Medical Director, [4]      *
   Maryland Reception Diagnostic Classification
   Center      *

Defendants.      *

***

## MEMORANDUM

Pending are Motions to Dismiss or, in the Alternative, for Summary Judgment (ECF Nos.

14 and 20) filed by Defendants James P. O'Neill, Director of the Baltimore County Detention

Center ("BCDC"), Tyrone Crowder, Warden of the Maryland Reception, Diagnostic and

Classification Center ("MRDCC"), and a Motion for Summary Judgment (ECF No. 29) filed by

JoAnne Hartung, Medical Director of MRDCC and Corizon, Inc. Plaintiff Corey Richard Horne

has filed oppositions to the dispositive motions. ECF Nos. 16, 27, 31. No hearing is necessary.

*See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the Court will grant Defendants

---

[1] The Clerk will amend the docket to add James P. O'Neill, Director of the Baltimore County Detention Center ("BCDC"), in lieu of John/Jane Doe.

[2] Service has not been obtained on John/Jane Doe, Medical Director of BCDC. ECF Nos. 4 and 7.

[3] The Clerk will amend the docket to add Tyrone Crowder, Warden of the Maryland Reception Diagnostic Classification Center ("MRDCC"), in lieu of John/Jane Doe.

[4] The Clerk will amend the docket to add JoAnne Hartung, Medical Director of MRDCC in lieu of John/Jane Doe and will add Corizon, Inc. as a defendant. ECF No. 12.

O'Neill and Crowder's Motions for Summary Judgment, ECF Nos. 14 and 20, and deny Hartung and Corizon's Motion for Summary Judgment, ECF No. 29. [5]

I.    Background

  A. Horne's Complaint

From May 21, 2009 to October 28, 2009, Horne was housed at the BCDC. ECF No. 1 at 4-5. To manage his high blood pressure, Horne alleges that he was "continued on" a thrice-daily prescription for Lisinopril and Clonidine. *Id.* at 4. At approximately 5:30 a.m. on October 28, 2009, Horne was transferred from BCDC to MRDCC. *Id.* at 5. The transfer occurred prior to the morning administration of his medication. *Id.* Horne alleges that he asked corrections staff to see a doctor "several times" on October 29, 2009, but his requests were denied.[6] *See id.* Horne claims he did not see a nurse at MRDCC until 8:00 p.m., at which time he complained

---

[5]    Horne's Motion to Appoint Counsel (ECF No. 26) will be granted. *See* 28 U.S.C. § 1915(e)(1); *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) ("If it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him."), *abrogated on other grounds, Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989).

    Horne's Motion to Amend his Complaint (ECF No. 10) will also be granted. Under Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." A complaint is a pleading to which a responsive pleading is required. Fed. R. Civ. P. 7(a)(2). "Therefore, under Rule 15(a)(1)(B), a party has an absolute right to amend its complaint *at any time from the moment the complaint is filed until 21 days after* the earlier of the filing of a responsive pleading or a motion under Rule 12(b), (e), or (f)." *Villery v. Dist. of Columbia*, 277 F.R.D. 218, 219 (D.D.C. 2011) (emphasis added) (*citing Stone v. Dewey*, No. 10-cv-159, 2011 WL 2784595, at *6 (N.D. Fla. July 14, 2011)). Horne filed his initial Complaint on September 28, 2011. ECF No. 1. Horne moved to amend his Complaint on November 7, 2011. ECF No. 10. The Defendants filed their Answer to the Complaint on November 30, 2011. ECF No. 12. The first motion to dismiss was filed on December 1, 2011. ECF No. 14. Because Horne moved to amend his Complaint before the Defendants filed either their Answer or Rule 12 motions, this Court will grant Horne's Motion to Amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B); *Villery*, 277 F.R.D. at 219 ("In cases involving multiple defendants, a plaintiff may file an amended complaint as of right concerning only those defendants who, at the time the plaintiff files his amendment, have not yet filed an answer or a Rule 12(b), (e), or (f) motion.").

[6]    Horne did not file a grievance as required by the prison's administrative remedy procedures. ECF No. 1 at 2.

about not receiving his medication and reported symptoms of elevated blood pressure, including

a severe headache and blurred vision. *See id.* He explains:

> The nurse then checked the plaintiff's blood pressure and went to retrieve the
> records, upon her return she explained that (BCDC) had sent the medical records,
> However they failed to send any medication along with the plaintiff. Then [sic]
> informed the plaintiff that per (MRDCC) policy all detention centers are suppose
> [sic] to send a prisoners medication with them upon transfer because until it is
> proscribed [sic] by (MRDCC) doctors they are not allowed to administer from
> Division of Correction stock and that aside from leaving a massage [sic] that the
> doctor should see the plaintiff as soon as possible there was nothing further she
> could do.

*Id.*

On October 30, 2009, nursing staff found that Horne's blood pressure was elevated and

he was transported by ambulance to the Johns Hopkins Hospital ("JHH") for treatment. ECF

No. 1 at 5; *see also* ECF No. 20-6 (Ex. 5). After receiving the final dose of medication at JHH,

Horne alleges that he "blacked out" and did not regain consciousness until the next day. ECF

No. 1 at 5. Horne was then informed by a JHH doctor that, because of sustained excessive

hypertension, his heart was damaged and there was a "substantially high risk" that he would

experience future heart failure "and/or kidney dysfunction and stroke." *Id.* at 5-6. Horne asserts

that this diagnosis has "come to fruition," in that he has experienced "an increased level of

toxicity" of his blood, which allegedly demonstrates kidney dysfunction, as well as "permanent

degradation in his eyesight" and an almost constant state of lightheadedness and dizziness.[7] *Id.*

at 6. On November 4, 2009, he was transferred from MRDCC to Eastern Correctional

Institution. ECF No. 20-2 (Ex. 1) at 1.

---

[7] Horne provides no documentary support for these allegations.

Horne claims that the Defendants' denial of medication demonstrates deliberate indifference to his serious medical needs. ECF No. 1 at 3, 6. He requests $250,000 in compensatory damages. *Id.* at 6.

B. The Defendants' Exhibits[8]

1. The BCDC Defendants

Horne received medication for hypertension while in custody at BCDC. ECF No. 14-4 (Ex. 3) at 3. The medicine was prescribed by a Conmed physician.[9] *Id.* Defendant O'Neill[10] attests, "[a]t no time did any personnel at the [BCDC], including myself, refuse to or interfere with the rendering of medical treatment to Plaintiff, to include the provision of medication while Plaintiff was in the custody of the [BCDC]." *Id.* O'Neill further states that BCDC's Medication and Administration Policy 4.2.06 requires a "Qualified Health Care Professional to determine on a case by case basis whether or not to transfer medication with the inmate when he[] is released or transferred from the [BCDC] to another correctional facility." *Id.* Accordingly, "[i]t is the standard practice of the [BCDC] that when an inmate is transferred to [MRDCC], supply medication is not given to the inmate's transporting agent upon inmate's release [from BCDC]." *Id.*; *see also* ECF No. 14-5 (Ex. 4) at 5 ("where determine[d] appropriate by a Qualified Health Care Professional," a supply of medication "shall be given to the inmate's transporting agents"). O'Neill explains that this practice is "reasonable and sound given that [MRDCC] is

---

[8] No affidavit or other sworn verification accompanies the medical records filed by counsel for Corizon and the MRDCC Medical Director. ECF No. 29. Affidavits verifying the records filed in support of their dispositive motions have been filed by O'Neill (ECF No. 14, Ex. 3) and Crowder (ECF No. 20, Exs. 1 and 7). There has been some duplication of the medical records filed by the parties.

[9] According to Horne, Conmed is the "contractual medical provider" for BCDC. *See* ECF No. 10.

[10] O'Neill was the Director of the BCDC at the time of the events alleged by Horne and accepted service on behalf of John/Jane Doe, Warden of the BCDC. ECF No. 14-1 at 1.

approximately 20 minutes travel time from [BCDC] and the law requires that an inmate be

screened upon intake to this facility, which includes making a determination about what, if any,

medication is needed." ECF No. 14-4 (Ex. 3) at 3-4.

    2.   The MRDCC Defendants

    Horne's Transfer of Medical Information form, completed at BCDC prior to his transport,

indicated that Horne was taking Motrin and Fluoxetine. ECF No. 20-4 (Ex. 3); ECF No. 29-3

(Ex. A-1) at 2. It further indicated that Horne would not need to take medication during the

transfer. ECF No. 29-3 (Ex. A-1) at 2; ECF No. 20-2 (Ex. 1) at 1.

    According to Defendant Crowder,[11] it is the "policy" of the Department of Public Safety

and Correctional Services that "inmates are to be seen within 24 hours of their arrival at any

intake facility." ECF No. 20-2 (Ex. 1) at 1. Horne arrived at MRDCC on October 28, 2009, at

6:55 a.m. *Id.* He was seen by medical personnel at 7:13 p.m. that same day. *Id.* MRDCC

therefore complied with the above policy. *Id.* On the resulting medical intake report,[12]

Lisinopril and Clonidine were listed with Motrin and Fluoxetine as "Self-Reported Medications."

ECF No. 20-5 (Ex. 4) at 1-2. The report does not support Horne's allegation that he told a

"nurse"[13] about missing his medication or suffering from symptoms of elevated blood pressure.

---

[11]   Crowder is the Warden at MRDCC. ECF No. 20-2 (Ex. 1) at 1. Crowder declares that his responsibilities are "solely to act as chief administrator of MRDCC" and that it is "beyond the scope of [his] job title . . . to perform any kind of medical, dental, or mental health treatment on a patient or prescribe a particular course of treatment." ECF No. 20-7 (Ex. 6) at 1. He has no supervisory control over medical providers and lacks authority to dictate inmate medical treatment or to influence the medical decisions of contractual medical providers. *Id.* He attests he has not interfered with or delayed health care to Horne. *Id.*

[12]   The report is signed by JoAnne Hartung, Medical Director of MRDCC. ECF No. 20-5 (Ex. 4) at 1.

[13]   It is unclear whether Hartung is the "nurse" to whom Horne refers in his Complaint. *See* ECF No. 1 at 5.

*Id.* at 1-3.[14] It also does not show that a nurse assured Horne she would leave a message for the doctor on Horne's behalf. *See id. But see* ECF No. 1 at 5.

According to Crowder, the medical department did not receive any sick call requests from Horne on October 29, 2009. ECF No. 20-2 (Ex. 1) at 1. At 12:20 p.m. on October 30, 2009, licensed practical nurse ("LPN") Grace Ati gave Horne a rapid HIV test, which yielded negative results. ECF No. 29-3 (Ex. A-8) at 9. Nothing in the medical record from that visit indicates that Horne asked to see a doctor for his hypertension, reported that he had missed doses of his medications, or exhibited symptom of high blood pressure or other distress.[15] *See* ECF No. 29-3 (Exs. A-7, A-8) at 8-9. Later that day, Horne was discovered to have an elevated blood pressure level of 220/160, and was transported by ambulance at 9:00 p.m. to JHH where he stayed overnight. ECF No. 20-2 (Ex. 1) at 1; ECF No. 20-6 (Ex. 5); ECF No. 29-3 (Ex. A-9) at 10. He was discharged from JHH on October 31, 2009, and returned to his cell at MRDCC. ECF No. 20-2 (Ex. 1) at 1. On October 31, 2009, prison health providers recorded Horne's blood pressure as stable. ECF No. 20-5 (Ex. 4) at 4.

On September 28, 2011, Horne brought suit under 42 U.S.C. § 1983 against the Wardens and Medical Directors of BCDC and MRDCC, alleging that he was improperly denied blood pressure medication. ECF No. 1. Also on September 28, Horne moved to proceed in forma pauperis. ECF No. 2.

On October 4, 2011, this Court granted Horne's motion to proceed in forma pauperis and ordered the Defendants to respond to the Complaint. ECF No. 4. On November 7, 2011, Horne

---

[14] Horne's blood pressure was "slightly elevated" at 150/90. ECF No. 29-1 at 7; ECF No. 29-3 (Ex. A-4) at 5.

[15] The medical form for the visit shows that Horne again "self-reported" taking Lisinopril and Clonidine, apparently referring to his medication regimen from BCDC. ECF No. 29-3 (Ex. A-7) at 8. The parties do not allege this constitutes evidence he was receiving blood pressure medication at MRDCC at this time.

6

moved to amend his Complaint. ECF No. 10. On November 30, 2011, Hartung and Corizon, Inc. answered Horne's Complaint. ECF No. 12. On December 1, 2011, O'Neill moved to dismiss or for summary judgment. ECF No. 14. On December 21, 2011, Horne opposed O'Neill's motion. ECF No. 16. On December 22, 2011, O'Neill requested an extension of time to respond to Horne's opposition. ECF No. 17. On December 27, 2011, Crowder moved for an extension of time to answer Horne's Complaint. ECF No. 18. On January 4, 2012, this Court granted both requests. ECF No. 19. On January 10, 2012, Crowder moved to dismiss or for summary judgment. ECF No. 20. On January 19, 2012, O'Neill replied to Horne's opposition. ECF No. 23. On February 6, 2012, Horne moved to have counsel appointed. ECF No. 26. Also on February 6, Horne opposed Crowder's motion. ECF No. 27. On April 18, 2012, Hartung and Corizon, Inc. moved for summary judgment. ECF No. 29. On May 10, 2012, Horne opposed the motion. ECF No. 31. On May 24, 2012, Hartung and Corizon, Inc. replied to Horne's opposition. ECF No. 32.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant[s],"
and draw all reasonable inferences in their favor, *Dennis v. Columbia Colleton Med. Ctr., Inc.*,
290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation
of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."
*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

## ANALYSIS

The government is "obligat[ed] to provide medical care for those whom it is punishing by
incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When prison officials show
"deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give
rise to an Eighth Amendment violation. *Id.* at 104.[16] The prison official "must both be aware of
facts from which the inference could be drawn that a substantial risk of serious harm exists, and
he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical
treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the
conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851
(4th Cir. 1990). Thus, a health care provider must have actual knowledge of a serious condition,
not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir.
1998). Mere negligence or malpractice does not violate the Eighth Amendment. *Miltier*, 896
F.2d at 852. Neither does an inmate's disagreement with medical providers about the proper

---

[16] Pretrial detainees enjoy at least the same protections under the Fourteenth Amendment Due Process Clause as
do convicted inmates under the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244
(1983); *Bell v. Wolfish*, 441 U.S. 520, 535-38 (1979). Horne was arrested on May 21, 2009 for armed robbery and
was sentenced on October 26, 2009. ECF No. 14-4 (Ex. 3) at 2. Thus, when he was transferred from BCDC to
MRDCC on October 28, 2009, Horne was serving his sentence of conviction and his claims are properly analyzed
under the Eighth Amendment.

course of treatment. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones,* 554 F.2d 1285, 1286 (4th Cir. 1977); *Russell v. Sheffer,* 528 F.2d 318, 318 (4th Cir. 1975).

Prison officials cannot be held liable for actions or failures to act on the part of the medical staff, nor can they be held liable for relying on the professional medical judgment of health care providers employed by the prison to care for inmates. *See Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977); *see also Carter v. Morris,* 164 F.3d 215, 220-21 (4th Cir. 1999). Supervisory prison officials can only be liable when it is shown they failed to timely provide needed care, deliberately interfered with doctors' performance, or tacitly authorized or were deliberately indifferent to prison physicians' constitutional violations. *See Shakka v. Smith,* 61 F.3d 162, 167 (4th Cir. 1995); *Miltier,* 896 F.2d at 854-55.

## Claims Against Crowder

Horne raises no specific allegations against Crowder, nor asserts that Crowder interfered with his medical treatment. To the extent Horne intends to hold Crowder liable under principles of respondeat superior[17] or supervisory liability, the doctrine of respondeat superior generally is inapplicable to § 1983 suits; an employer or supervisor is not liable for the acts of employees, absent an official policy or custom that results in illegal action. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978); *Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004). Supervisory liability under § 1983 must be supported with evidence that: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to

---

[17]  Respondeat superior is a legal doctrine that holds the employer responsible for its employees. *Johnson v. Lamb,* 161 S.E.2d 131, 137 (N.C. 1968), *cited in Holly v. Scott,* 434 F.3d 287, 296 (4th Cir. 2006).

or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory liability is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (*quoting Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

The Complaint does not allege Crowder was aware of Horne's medical condition and deliberately ignored it or tolerated any subordinate doing so. Horne failed to file a sick call slip with corrections officials during the time period between arriving at MRDCC and his emergency transport to JHH. ECF No. 20-2 (Ex. 1) at 1. Absent allegation or factual predicate to suggest Warden Crowder had actual or constructive knowledge of Horne's medical concerns, there are no grounds for assigning supervisory liability and Crowder is entitled to summary judgment in his favor.[18]

### Claims Against O'Neill

Similarly, Horne makes no claim that O'Neill was personally involved in his medical care. *See Vinnedge*, 550 F.2d at 928. Horne avers instead that the BCDC policy, which dictates that supply medication not be given to the transporting agent upon an inmate's release,[19] led to his injury. ECF No. 16 at 3. Horne does not allege, however, that O'Neill had actual or

---

[18] Horne also does not appear to have exhausted his claim under the prison Administrative Remedy Procedure process. His claims against Warden Crowder are dismissible on the ground of nonexhaustion. *See* 42 U.S.C. § 1997e(a) ( "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted."); *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 677 (4th Cir. 2005) (exhaustion is mandatory).

[19] ECF No. 14-4 (Ex. 3) at 3.

10

constructive knowledge of conduct or a policy that posed a pervasive and unreasonable risk to him nor exhibited deliberate indifference or tacit authorization to a practice posing a known risk. O'Neill was entitled to reply on the judgment of prison medical providers, and the record does not suggest that he failed to timely provide needed care, deliberately interfered with the doctors' performance, or tacitly authorized or was deliberately indifferent to an abridgement of Horne's constitutional rights. Therefore, there are no grounds for assigning supervisory liability and O'Neill is also entitled to judgment as a matter of law.

### Claims Against Hartung and Corizon, Inc.

The parties agree that Horne was not given his blood pressure medication on October 28, 2009, and for most of the day on October 30, 2009. *See* ECF No. 29-1 at 2-3. Horne claims that when he met with the "nurse" at MRDCC on October 28, 2009, he told her that he was suffering symptoms related to his high blood pressure and that he had yet to have his medication that day. ECF No. 1 at 5. The nurse allegedly responded that MRDCC may only distribute medications prescribed by its doctors, and said that she could leave a message for the doctor. *Id.* Defendants Hartung and Corizon, Inc. argue that Horne's medical intake form—completed by Hartung[20]— fails to substantiate these allegations, but provide no affidavit from Medical Director Hartung (or other verified exhibit) to refute Horne's claims. *See generally* ECF Nos. 29-3, 29-4, 29-5. Horne's "self-reported" medications, which are recorded on the intake form, would appear to contradict the Defendants' assertions that they were unaware of any risk to Horne's health. ECF No. 29-3 (Ex. A-4) at 5-6; *see Estelle*, 429 U.S. at 104. Accordingly, the Court finds that genuine disputes as to material fact remain; the Motion for Summary Judgment filed by Corizon, Inc. and the MRDCC Medical Director will be denied.

[20] ECF No. 29-3 (Ex. A-4) at 5.

11

## CONCLUSION

For the reasons stated above, O'Neill and Crowder's Motions to Dismiss or for Summary

Judgment (ECF Nos. 14 and 20) will be granted. Hartung and Corizon, Inc.'s Motion for

Summary Judgment (ECF No. 29) will be denied.

_4/5/12_
Date

William D. Quarles, Jr.
United States District Judge

12